## HAUSMAN, Appellant, v. SESSINGHAUS, Respondent.

### St. Louis Court of Appeals, November 27, 1906.

BANKRUPTCY: Expense Incurred by Trustee: Jurisdiction. Where a trustee in bankruptcy, having charge of and operating the business of the bankrupt, incurred debts by reason of such operation, such debts could be allowed against the estate under sections 62 and 64 of the Bankrupt Act, and a State court had no jurisdiction of an action by the holder of such claims against a purchaser of the bankrupt property who assumed them as a part of the consideration of the purchase.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

AFFIRMED.

*A. H. Roudebush* for appellant.

The promise and undertaking of respondent to pay outstanding accounts of the trustee in bankruptcy was for the benefit of creditors holding those accounts and they or their assignee (the appellant) could maintain an action thereon. Ellis v. Harrison, 104 Mo. 270; Winn v. Lippincott, 125 Mo. 528; Kansas City, etc., Co.

v. Thompson, 120 Mo. 218; Howsmon v. Water Co.; 119 Mo. 304; Bank v. Edwards, 84 Mo. App. 462.

*W. S. Anthony* for respondent.

GOODE, J.—In April, 1904, the Farmington Electric Light & Ice Company, of Farmington, Missouri, was adjudged a bankrupt and in the course of the proceedings in bankruptcy in the United States District Court for the Eastern Division of the Eastern District of Missouri, William Buddecke was appointed receiver and trustee of the estate. Appellant, Albert E. Hausman, was attorney for Buddecke as receiver and trustee. The factory of the Electric Light & Ice Company was kept in operation after the corporation had been declared a bankrupt, and in operating it the trustees incurred debts approximating one thousand dollars. One of those debts was to the Garden City Chandelier Company to the amount of thirty-seven dollars for electric appliances; another was to the Illinois Fuel Company for fuel, amounting to seventy-seven dollars and sixteen cents, and the third was to the Johns-Manville Company for ninety-seven dollars and eighty cents for supplies of kinds not stated. Those obligations against the trustee Buddecke were purchased by and assigned to appellant Hausman, who instituted this action before a justice of the peace to recover the amount of the three demands. The case was carried to the circuit court of St. Louis where, on a trial anew, a demurrer was sustained to the evidence introduced by appellant and he appealed to this court. The facts relied on for recovery are these: Buddecke, the trustee, had advertised the property of the bankrupt corporation for sale at public vendue on September 26, 1904. Some three weeks prior to the date fixed for the sale (i. e. September 6th) an arrangement was made between Buddecke and the respondent Sessinghaus for the latter, who was interested in the property, to bid it in on the following terms: Sessinghaus was to assume all outstanding incumbrances

of the company and the obligations incurred by the trustee during his administration, including the three in suit, and pay besides $350 in cash. Buddecke swore Sessinghaus was to pay $350 for the plant, subject to incumbrances and also "several bills which were mentioned; most particularly the Johns-Manville account, the Garden City Chandelier account and (he thought) the Illinois Fuel Company account." Buddecke testified these three items were mentioned and it was further understood he would take care of any other bills contracted for the light plant during his administration. Hausman swore the agreement with Sessinghaus was that the latter should pay enough cash to cover attorney's fees and court costs, which were computed to amount to $350, assume all outstanding incumbrances and pay all accounts incurred by the trustee in administering the estate, which accounts included the three in controversy. The plant of the bankrupt corporation was incumbered by a series of bonds of two hundred dollars each, and amounting in all to ten thousand four hundred dollars, which are designated in the record as the "Bendit bonds." Sessinghaus himself owned six thousand dollars at par value of these bonds and Buddecke had some of them, perhaps five. It was stipulated in the agreement between Sessinghaus and Buddecke that Buddecke should procure for Sessinghaus all the Bendit bonds the latter did not own and turn them over to him at fifty cents on the dollar; that is to say, as Sessinghaus owned six thousand dollars of the bonds, he was to get the remaining four thousand four hundred dollars worth for twenty-two hundred dollars. It is inferable from the testimony that the reason this arrangement was made with Sessinghaus was because he would not take less than par value for his bonds and, hence, a better price could be realized by selling to him on the terms stated than any other purchaser would pay. The foregoing understand-

Hausman v. Sessinghaus.

ing having been reached, the sale occurred at public vendue on September 26th, at Farmington, as advertised; but Sessinghaus instead of bidding three hundred and fifty dollars, bid only one hundred dollars for the property, subject to incumbrances, and another bidder offered five thousand dollars for it free from incumbrances. Neither bid was accepted by the trustee, who returned to St. Louis without concluding the sale. In a few days Sessinghaus, or his attorney, came to St. Louis and, the matter having been discussed further with Buddecke, Sessinghaus agreed to raise his bid to three hundred and fifty dollars for the property, subject to the Bendit bonds, for all of which, except those he held, he was to pay fifty cents on the dollar and also pay the obligations incurred by the trustee while in charge of the property. In other words, to carry out the original agreement. The sale was concluded on these terms, Sessinghaus took possession of the property and a deed was made out and tendered to him by the trustee; whether it was accepted or not the testimony fails to disclose. After the agreement with Sessinghaus to pay the outstanding accounts of the trustee, including those in controversy, had been reached on September 6th, Hausman bought the three accounts in dispute and took an assignment of them to himself. He was still attorney for the trustee Buddecke, who was interested in the Johns-Manville account. Hausman sued Sessinghaus for the demands, the ground of the action being that Sessinghaus's verbal agreement with Buddecke to pay them was a promise made for the benefit of the owners and holders on which they, or he as their assignee, was entitled to recover. This contention might be upheld, perhaps, were it not for the policy of the bankruptcy act of 1898, as indicated in several of its clauses, regarding the payment of the liabilities of a bankrupt estate and the order in which they shall be paid. Section 62 of the act provides that "the actual

and necessary expenses incurred by officers in the administration of estates shall, except where other provisions are made for their payment, be reported in detail under oath and examined and approved or disapproved by the court. If approved they shall be allowed and paid out of the estate in which they were incurred." Section 64 states the priorities in respect of payment which demands of different sorts shall enjoy. It provides for the payment, firstly, of all taxes due any taxing sovereignty; secondly, the actual and necessary costs of preserving the estate subsequent to the filing of the petition; thirdly, the filing fees paid by creditors in involuntary cases and expenses of creditors incurred in recovering property for the benefit of the estate; fourthly, the cost of administration, including fees and mileage of witnesses, with reasonable attorney fees; fifthly, wages due workmen and clerks or servants, earned before the commencement of proceedings, not to exceed three hundred dollars to each claimant, and sixthly, debts owing to persons who are entitled to priority under the laws of the State where the proceeding is pending, or of the United States. By the amendatory act of 1903, section 72 was added to the original act. It provides that neither the referee nor trustee shall in any form or guise receive, nor shall the court allow either of them, any other compensation for his services than is authorized or prescribed in the act. Those regulations of the payment of demands, including expenses and cost of adminstration, put such matters under the control of the Federal court where the bankruptcy proceeding is pending, and give it, we think exclusive jurisdiction. In any view of the law, it is certain that one claimant cannot proceed to collect his claim by an independent action against a purchaser of the trust property who owes the trustee the purchase price. Appellant is trying to recover the whole of these three assigned demands from respondent, on the promise of the latter

to the trustee that he would pay the demands as part of the consideration for the plant. To sustain such an action would be to withdraw the allowance of demands against the estate, and control over their payment, from the jurisdiction of the Federal court which is charged with the duty of regulating them in accordance with the bankrupt act. If respondent is made to pay these demands, the result might be that other claimants whose demands ought to be paid *pro rata* with these, or in preference to them, would not be paid at all. This is not permissible. [Mare v. Sandford, 1 Giff. 288.] But appellant answers that respondent agreed to pay all outstanding demands and, hence, everybody must be paid in full. For aught we know, Sessinghaus may be in such financial straits, or his property so disposed of, that other claimants could not collect their demands. Be that as it may, the proper mode for him to pay his bid and the trustee to receive payment of it, was for all outstanding obligations of the trustee to be allowed by the Federal court and respondent then pay the trustee enough money to cover them, or else make payment to the claimants themselves with the approval of the court. In other words, the matter should have been settled under the direction of that court and according to its orders. This is the policy of the bankrupt law.

We have said nothing about a fact which appears from the record, namely, that the arrangement with Sessinghaus enured to the benefit of the trustee himself. This circumstance would be a very serious one if it was necessary to consider it.

The judgment is affirmed. All concur.